Cy COLEMAN; Leonard Bernstein; Stephen Sondheim; David Fields Lahm, Sidney Aron and Albert I. DaSilva, as co-executors of the estate of Dorothy Fields; Famous Music Corp.; Warner Bros., Inc.; Rilting Music, Inc.; Revelation Music Publishing Corp.; Paramount Music Corp.; Zeon Music; Freejunket Music; Controversy Music; G. Schirmer, Inc.; Jobete Music Co., Inc.; November Nights Music; Almo Music Corp.; Chappell & Co., Inc.; Theodore Presser Company; Shapiro, Bernstein & Co., Inc.; Jim Boy Music; and Don Schlitz Music, individually and on behalf of all members of the American Society of Composers, Authors and Publishers, Plaintiffs,

v.

ESPN, INC., Defendant.

No. 90 Civ. 3632 (RPP).

United States District Court, S.D. New York.

May 8, 1991.

Paul, Weiss, Rifkind, Wharton & Garrison by Martin Flumenbaum, New York City, for plaintiffs.

Weil Gotshal & Manges by Kenneth G. Steinthal, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a class action brought by composers, their estates and music publishers asserting copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* Plaintiffs move for summary judgment on the complaint and striking certain of ESPN's affirmative defenses pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs named in the complaint are composers, the estate of a deceased composer and music publishers who are members of the American Society of Composers, Authors and Publishers ("ASCAP"). ASCAP is a performing rights society founded in 1914 having the non-exclusive right to license and collect royalties for non-dramatic public performances of the copyrighted musical compositions of its approximately 45,000 members. Charap Aff. ¶ 3. ASCAP also monitors performances appearing on radio, television and cable programming for unlicensed uses of compositions within the ASCAP repertory. Ayden Aff. ¶ 2. Each ASCAP member authorizes ASCAP to sue for copyright infringement on the member's behalf when unlicensed performances are discovered. Charap Aff. ¶ 4.

Defendant ESPN, Inc. ("ESPN") is a cable service which supplies 24–hour programming consisting of sporting events and sports news to cable system operators. ESPN has 52 million individual subscribers nationwide. The complaint charges that "[m]any, if not all, of the cable television programs ESPN supplies ... contain non-dramatic public performances of copyrighted musical compositions" for which ESPN is not licensed. Complaint filed May 30, 1990 ¶¶ 11–12. Annexed to the complaint is a schedule of twenty sample infringements alleged to have occurred between November 1988 and April 1990.[1] The compositions listed in the schedule include Stephen Sondheim's "Send in the Clowns," alleged to have been performed on November 14, 1988 as part of Skate International America 1988, "Beer Barrel Polka," alleged to have been performed on March 3, 1990 as part of NCAA Basketball, and Prince's "U Got the Look" alleged to have been performed on December 24, 1988 as part of the 1988 National High School Cheerleading Championships. Ayden Aff., Exh. A. The length of these and other performances ranges from 35 seconds to nearly four minutes. *Id.* ¶ 7. In several instances, the entire composition was performed. *Id.* ESPN has admitted that the twenty compositions identified in the complaint

---

1. The compositions were identified by comparing audiotapes of the performances with sheet music and commercial recordings of plaintiffs' works. Kenneth Ayden, a professional musician and Manager of the Recording and Transcription Section of the Performance Analysis Department of ASCAP, performed the comparisons. Ayden Aff. ¶¶ 1, 6.

were correctly identified from tapes of ESPN programs and that ESPN was neither licensed nor authorized to perform them. Ricigliano Aff. ¶ 4; Charap Aff., Exh. D.

In a letter dated August 29, 1988 ASCAP had urged ESPN, without success, to obtain appropriate licensing pursuant to *United States v. American Soc'y of Composers, Authors & Publishers*, 1950–51 Trade Cas. (CCH) ¶ 62,595 (S.D.N.Y.1950), which provides a judicial mechanism known as the "rate court" for determining reasonable license fees. *Id.*, Exh. F; Tr. at 22.[2] ESPN however declined to join the rate court proceeding of *United States v. ASCAP/In re Application of Turner*, No. 89 Civ. 13–95 (S.D.N.Y. filed Jan. 13, 1989), an action to determine whether Showtime and 33 similarly situated cable companies are entitled to a per program license from ASCAP.[3]

ESPN disavows any need to obtain music licenses from ASCAP for a number of reasons: (1) ESPN commissions its own music;[4] (2) ESPN requires program packagers who supply programming to ESPN to warrant that any necessary rights have been obtained;[5] (3) ESPN uses specialized music libraries;[6] and (4) ESPN obtains individual licenses directly from copyright owners when necessary.[7]

In response to the specific instances of infringement alleged in the complaint, ESPN claims that five compositions— "Let's Go Blue," "Beer Barrel Polka," "Prove Your Love," "Don't Rush Me," and "Danger Zone"—constituted "ambient" noise, i.e., sound audible in the arena during a sports event such as live crowd noise. King Aff. ¶¶ 10–12. ESPN argues that ambient arena noise is not under its control, is merely incidental to its coverage of live sporting events and is picked up only fortuitously, all of which make its use not infringing. Colby Aff. ¶ 2.

ESPN further argues that the background music used by athletes as accompaniment for their routines, including "U Got the Look" and "Send in the Clowns," cannot give rise to copyright infringement because such background music "is not 'essential' to ESPN's programming." King Aff. ¶ 13. ESPN points out that commentators frequently speak over the music in order to comment on the athlete's performance and that instant replays are broadcast without the accompanying music. *Id.* ¶¶ 14–15.

Finally, ESPN offers an affidavit from the producer of the Ms. Fitness America competition in which he states he was informed by Richard Reimer of ASCAP that no license would be necessary in conjunction with use of "Babylon Sisters" and "Hot Thing" if no "line feed" was used,[8] as

**2.** References to the transcript of oral argument held before this Court on February 4, 1991 are designated "Tr. at ——."

**3.** While blanket licenses and per program licenses cover the entire ASCAP repertoire, the fee for a per program license is based only on the revenues of the program on which the music is played whereas the blanket license fee is calculated from the user's total revenues. *See Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 11, 99 S.Ct. 1551, 1558, 60 L.Ed.2d 1 (1979); *id.* at 27 n. 8, 99 S.Ct. at 1555 n. 8 (Stevens, J., dissenting). Per program licenses are most useful to broadcasters whose schedule consists predominantly of non-musical programming. *See Columbia Broadcasting Sys., Inc. v. American Soc'y of Composers, Authors & Publishers*, 562 F.2d 130, 134 n. 9 (2d Cir.1977), *rev'd on other grounds*, 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

**4.** Colby Aff. ¶ 4.

**5.** King Aff. ¶ 6. ESPN admits, however, that it "unknowingly utilized" the composition "Thanks for the Memory" cited in plaintiffs' schedule of alleged infringements in a broadcast of the 1990 Bob Hope Chrysler Classic golf tournament without first obtaining a license from ASCAP and without requiring proof of proper licensing by the program supplier. Caulfield Aff. ¶ 2–5.

**6.** Colby Aff. ¶ 5. The record does not reveal the manner in which performing rights are secured for compositions in music libraries. In any event, ESPN has not identified any of the twenty compositions listed in the complaint as having been obtained from a music library.

**7.** *Id.* ¶ 6; Charap Aff., Exh. J.

**8.** Apparently, a "line feed" is a method of directly transmitting the music from its source as opposed to picking up the sound with a microphone after it is broadcast in the arena. *See* Reimer Aff. ¶ 4.

ESPN maintains it was not. Zwick Aff. ¶¶ 4–5. Reimer denies knowledge of having made any such statement. Reimer Aff. ¶¶ 3–4.

Plaintiffs move for summary judgment on the complaint and striking ESPN's fair use, copyright misuse, estoppel and unclean hands defenses.

## DISCUSSION

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

██ The ownership and validity of plaintiffs' copyrights is not in dispute. The copyright law gives copyright owners the exclusive right, in the case of musical works, to perform the copyrighted work publicly and to authorize any public performances. 17 U.S.C. § 106(4). Section 101 of the Copyright Act of 1976 defines "public performance" as follows:

To perform or display a work 'publicly' means—

(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

(2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101 (1988). It is undisputed that ESPN "performed" plaintiffs' copyrighted musical compositions. Ricigliano Aff. ¶ 4. Transmissions by a cable network or service to local cable companies who in turn transmit to individual cable subscribers constitute "public performances" by the network under 17 U.S.C. § 101(2) separate from the live public performances which fall under § 101(1). *See WGN Continental Broadcasting Co. v. United Video, Inc.*, 693 F.2d 622, 625 (7th Cir.1982); *David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 759 n. 3 (S.D.N.Y.1988). Whether ESPN broadcast certain compositions unintentionally because they constituted spontaneous crowd noise is immaterial. Intent is not an element of copyright infringement. *See Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110 (2d Cir.1986); *Nationwide Educ. Dev. Corp. v. Rex Communications, Inc.*, 16 U.S.P.Q.2d 1564, 1990 WL 64595 (S.D.N.Y.1990). *See also Columbia Broadcasting Sys., Inc. v. American Soc'y of Composers, Broadcasters & Publishers*, 620 F.2d 930, 939 (2d Cir.1980) (suggesting that license is required even for spontaneous performances of musical works), *cert. denied*, 450 U.S. 970, 101 S.Ct. 1491, 67 L.Ed.2d 621 (1981).[9]

### 1. Fair Use

██ The main issue presented is whether ESPN has raised any issues of fact as to the fair use defense. Fair use is a mixed question of law and fact, *see Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985), which requires a fact-intensive inquiry ill-suited for summary judgment. *See Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1255 (2d Cir. 1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987); *Diamond v. Am–Law Publishing Corp.*, 745 F.2d 142,

---

**9.** Even if ESPN had specifically instructed athletes to use only original or properly licensed compositions, there would be no defense since the broadcaster of an unauthorized public performance may be held vicariously liable for the infringement of a performer. *See, e.g., Criterion Music Corp. v. Biggy's, Inc.*, 701 F.Supp. 802, 804 (D.Kan.1988).

147 (2d Cir.1984); *DC Comics, Inc. v. Reel Fantasy, Inc.,* 696 F.2d 24, 28 (2d Cir.1982).

■ On this record, the unresolved factual issues precluding summary judgment on the complaint include whether each of the copyright takings alleged in the complaint is substantial and whether any individual taking is likely to impair the potential market for or value of the copyrighted work.[10] Accordingly, plaintiffs' motion for summary judgment on the issue of infringement is denied.

**2. Copyright Misuse**

■ Plaintiffs attack ESPN's second affirmative defense (Answer ¶ 29) which pleads copyright misuse on two grounds. First, plaintiffs argue that this circuit does not recognize copyright misuse as a defense to copyright infringement. The defense of copyright misuse prevents a copyright owner from recovering for infringement where he has impermissibly extended the copyright monopoly in a manner which constitutes an unreasonable restraint of trade.[11] ASCAP's initial position is that copyright misuse is not a valid defense as a matter of law. However, since the more recent cases hold that copyright misuse is a cognizable defense, plaintiffs' motion for summary judgment dismissing the defense as a matter of law is denied. *See Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. 1522 (S.D.N.Y.1991) (recognizing validity of copyright misuse as a defense to infringement but finding it unsupported on the facts); *Broadcast Music, Inc. v.*

*Hearst/ABC Viacom Entertainment Servs.,* 746 F.Supp. 320, 328 (S.D.N.Y.1990) ("the Court is persuaded by the more recent cases that the affirmative defense of copyright misuse is cognizable"); *United Artists Assoc., Inc. v. NWL Corp.,* 198 F.Supp. 953 (S.D.N.Y.1961) (denying plaintiff's motion to strike copyright misuse defense).[12] *Cf. Orth–O–Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, 686 (S.D.N.Y. 1979) (copyright misuse not a defense to infringement); *Peter Pan Fabrics, Inc. v. Candy Frocks Inc.,* 187 F.Supp. 334, 337 (S.D.N.Y.1960).

■ The second grounds for plaintiffs' attack is that even if copyright misuse is a valid defense to infringement, ESPN cannot establish on this record that there are no realistic alternatives available to it apart from the ASCAP blanket license. This question presents an issue of fact not resolvable on a motion for summary judgment. Accordingly, plaintiffs' motion for summary judgment dismissing ESPN's second affirmative defense is denied.

**3. Estoppel and Unclean Hands**

■ ESPN's third and fourth affirmative defenses (Answer ¶¶ 30–31) allege estoppel and unclean hands. Estoppel requires that the plaintiff aid the defendant in committing the acts alleged to constitute infringement or that plaintiff induce or cause defendant to perform such acts. M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.07 at 13–134 (1990). *See Broad-*

---

**10.** The case of *Italian Book Corp. v. American Broadcasting Cos., Inc.,* 458 F.Supp. 65 (S.D.N.Y. 1978), while it involves the fortuitous broadcast of music as part of a network's coverage of a news event, has no bearing on whether there are issues of fact on this motion. The opinion in *Italian Book* comprises findings of fact and conclusions of law by the court following a bench trial.

**11.** An unreasonable restraint of trade may be found based on blanket licensing practices if there are no alternatives such as per program licensing realistically available. *Cf. Buffalo Broadcasting Co. v. American Soc'y of Composers, Authors & Publishers,* 744 F.2d 917, 925 (2d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); *Columbia Broadcasting Sys., Inc. v. American Soc'y of Compos-*

*ers, Authors & Publishers,* 620 F.2d 930, 935–36 (2d Cir.1980) ("Trade is restrained … when rights to use individual copyrights or patents may be obtained only by payment for a pool of such rights…."), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1491, 67 L.Ed.2d 621 (1981).

**12.** This view comports with that of other circuits. *See Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 973 (4th Cir.1990) ("We are persuaded, however, that a misuse of copyright defense is inherent in the law of copyright just as a misuse of patent defense is inherent in patent law."); *United Tel. Co. of Missouri v. Johnson Publishing Co.,* 855 F.2d 604, 611 (8th Cir.1988) (assuming that "judicial authority teaches that the patent misuse doctrine may be applied or asserted as a defense to copyright infringement").

*cast Music, Inc. v. Hearst/ABC Viacom Entertainment Servs.,* 746 F.Supp. 320, 329–30 (S.D.N.Y.1990). The causation requirement for estoppel is met if there is express consent by the copyright owner or some statement that he does not regard defendant's acts as infringing or that he has no objection to defendant's work. *Id.* at n. 6 & 7.

There are issues of fact regarding causation or inducement in connection with ESPN's performance of "Babylon Sisters" and "Hot Thing." ESPN has come forward with facts tending to show that AS-CAP advised ESPN that no license was necessary and that ESPN relied upon such advice. ESPN has failed to raise any issue of fact, however, regarding causation or inducement in connection with the eighteen other compositions listed in the complaint. There is nothing in the record, viewed in the light most favorable to ESPN, to suggest that ASCAP shares even "partial responsibility" for ESPN's performance of those eighteen compositions. The record shows that responsibility for the allegedly infringing acts in connection with those compositions lies with ESPN alone. ESPN never sought to obtain a blanket license and refused to seek a determination of its right to a per program license by joining the *Turner* proceeding in or after 1989. *Cf. Hearst/ABC Viacom,* 746 F.Supp. at 329 (refusing to dismiss estoppel defense where defendant claimed BMI was responsible for "refusing to offer a reasonable license and precluding realistic alternatives").

In a copyright case, the defense of unclean hands requires that the plaintiff either participated in the acts of infringement or that plaintiff committed some "transgression" such as fraud upon the Copyright Office resulting in harm or prejudice to the defendant. *See Nimmer on Copyright, supra,* at 13–145 & n. 12.2. ESPN has not raised any issues of fact requiring trial on this defense. The record is devoid of any facts which would demonstrate that ASCAP either participated in ESPN's broadcasts or that the copyright owners acted with unclean hands in securing their registrations. Accordingly, plaintiffs' motion for summary judgment on ESPN's fourth affirmative defense is granted.

### CONCLUSION

In conclusion, plaintiffs' motion for summary judgment on the complaint and on ESPN's fair use and copyright misuse defenses is denied. Plaintiffs' motion for summary judgment on ESPN's estoppel defenses as applied to "Babylon Sisters" and "Hot Thing" is also denied. Plaintiffs' motion for summary judgment dismissing ESPN's estoppel defense as to the eighteen compositions apart from "Babylon Sisters" and "Hot Thing" and for summary judgment dismissing the unclean hands defense as to all twenty compositions is granted.

IT IS SO ORDERED.